**STATE of Iowa, Appellee,**

v.

**Dale Eugene GANSZ, Appellant.**

**No. 84–1774.**

Supreme Court of Iowa.

Nov. 13, 1985.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., and Ann E. Brenden, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

SCHULTZ, Justice.

Dale Eugene Gansz appeals from his conviction of perjury in violation of Iowa Code section 720.2. Gansz alleges that the trial court erred in submitting a marshalling instruction which allowed the jury to find him guilty of an offense not charged in the trial information and that was barred by the statute of limitations. We hold the instruction was erroneous and prejudicial to Gansz. Therefore, we reverse and remand.

In December 1979 Gansz was charged with two counts of first degree murder.

He was represented by two attorneys. Gansz had consistently told his attorneys that he had not been at the scene of the murders, but rather was at home watching television. In April 1980, on the day before Gansz was to present his case at the murder trial, he changed his story. The next day Gansz took the stand and testified that he had been present at the killings. The jury acquitted Gansz of one murder count, but found he was guilty of second degree murder on the other count. At the sentencing, Gansz stated that he in fact had not been present when the crime occurred and that one of his attorneys had instructed him to testify falsely at trial.

After an unsuccessful appeal of the second degree murder conviction, Gansz applied for postconviction relief and in February 1983 a hearing was held pursuant to his application. At the hearing Gansz testified that one of his attorneys had visited him the night before he was to testify at his 1980 murder trial. Gansz further testified the attorney informed him that unless he admitted that he was present at the scene of the crime, he would probably spend the rest of his life in prison. At the postconviction hearing Gansz stated that his 1980 trial testimony relating to how he had been at the scene of the crime was false. The court denied Gansz's application for postconviction relief.

Thereafter, on March 27, 1984, the State charged Gansz with committing perjury and the trial information in pertinent part stated: "on or about the 9th day of February A.D. 1983 ... Gansz did, while under oath ... knowingly make a false statement of material facts...." The minutes of testimony noted that the State would call three witnesses: a shorthand reporter and Gansz's two murder trial attorneys. The minutes stated the reporter would testify that she was the reporter at the postconviction proceedings and that a copy of Gansz's postconviction testimony was attached to the minutes. The minutes also indicated that the two attorneys would testify that at no time did they suggest or encourage Gansz to tell any specific story, they did not make up or suggest any facts to him to

testify to in court, and that Gansz's postconviction testimony was absolutely and completely false.

During his opening statement at Gansz's perjury trial, the prosecutor read the trial information, outlined the facts to the jury, and specified the State's charge of perjury. He stated:

And Dale [Gansz] said at that post conviction hearing that the story that [his lawyer] told him to tell was an absolute lie, that he was home watching television. The story that was concocted by [his lawyer] was the one that was told at the trial. That's why he's charged with perjury. The State has alleged that the testimony he gave at the post conviction hearing, the testimony that [his lawyer] made up a story for, that's the lie that we're alleging he told, not the lie back at the original trial or at the sentencing or at some other time, but the lie at the post conviction hearing that he said—that he was lying when he said at that hearing that his lawyers made up a story that they made him tell.

However, the marshalling instruction given to the jury was as follows:

You must find the defendant not guilty of the offense of perjury, unless you find the State has proved by evidence beyond a reasonable doubt, each of the following elements:

1.) That on or about the 9th day of February, 1983, the defendant testified during hearing upon his application for postconviction relief and was under oath.

2(a) That during hearing upon his application for postconviction, the defendant made a statement of fact, to wit: That he was not at the scene of the crime with which he was charged but was home watching television;

or

(b) That at the time of his trial on or about April 24, 1980, he was told by his attorney ... to testify to a story which was not true which involved him in the crime with which he was charged for the

purpose of attempting to secure a conviction for a crime of a lesser degree.

3.) That on or about April 25, 1980, defendant testified during his trial, under oath, and made a contradictory statement of fact to that made during his post-conviction relief hearing on February 9, 1983, to wit: that he was at the scene of the crime and involved in the killing of one of the victims.

4(a) That when he made either the statement on February 9, 1983, or the statement on April 25, 1980, one of them was false;

or

(b) That when defendant made the statement on February 9, 1983, during his post-conviction relief hearing, that he had been told by ... his attorney, to testify to a story which was not true, such statement was false.

5.) That such statement or statements were made by the defendant with the knowledge that they were false and with the intent that they would be considered true.

If you find the State has proved beyond a reasonable doubt each and all of the elements, then you will find the defendant guilty and you will answer the special interrogatory submitted with these instructions; but, if you find the State has failed to prove beyond a reasonable doubt one or more of the elements, then you shall find the defendant not guilty.

Gansz properly objected at trial to the elements in parts 2(a), 3, and 4(a) on two grounds: the trial information did not allege that Gansz committed perjury by making contradictory statements at his 1980 trial and his 1983 postconviction relief hearing; and any statements Gansz made at his 1980 trial were beyond the statute of limitations. The trial judge overruled both objections and declined to change the instructions. Gansz was convicted of perjury and sentenced accordingly. Gansz unsuccessfully raised the same issues in his motion for a new trial and motion in arrest of

judgment. He reasserts both of these issues on appeal to this court. We find the marshalling instruction was erroneous for both reasons urged by Gansz.

The trial information merely indicated that Gansz was charged with the crime of perjury because he allegedly made a false statement at his 1983 postconviction hearing. Because the charging information was not specific as to which particular statement Gansz made was alleged to be false, Gansz's attorney should have moved for a bill of particulars pursuant to Iowa Rule of Criminal Procedure 10(5). The minutes of testimony, however, set forth information concerning the attorneys', refuting Gansz's statement that one of them told him to lie at his murder trial. Additionally, in his opening statement, the prosecutor narrowed his charge to Gansz's statement that his attorney told him to testify to a story which was not true.

The State could have filed more than one charge of perjury and prosecuted on each individual false answer. *State v. Fisher*, 282 N.W.2d 684, 688 (Iowa 1979). Separate statements which have arisen from sworn testimony in the same time sequence and series of acts are separate offenses because they each have a separate essential element of proof—the different false statements. *See State v. Stewart*, 223 N.W.2d 250, 251 (Iowa 1974), *cert. denied*, 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975). Consequently, the State could have, but did not, file multiple perjury charges as separate counts within a single information. Iowa R.Crim.P. 6(1).

Even if we assume that the State's general charge of perjury was based on all of the statements Gansz made at the postconviction proceedings, including his sworn testimony that he was at home rather than at the scene of the crime, the marshalling instruction was still improper. The instruction specifically referred to the contradictory statements of fact made by Gansz in 1980 and 1983. Contradictory statements can be used to prove a party has committed perjury as follows:

A person who, while under oath or affirmation ... has made contradictory statements, the *indictment will be sufficient if it states* that one or the other of the contradictory statements was false, to the knowledge of such person, and it shall be sufficient proof of perjury that one of the statements made must be false, and that the person making the statements knew that one of them was false when the person made the statement, *provided that both statements have been made within the period prescribed by the applicable statute of limitations.*

Iowa Code § 720.2 (emphasis added).

■ When a prosecutor elects to prove perjury by presenting contradictory statements, the statute specifically requires that "the indictment will be sufficient if it states that one of the contradictory statements was false." The use of the term "states" obviously indicates that the indictment or information must include language about the contradictory statements and that one of the statements was false. There was no such language contained in the trial information in this case to indicate that the State was relying on Gansz's contradictory statements about being at the murder scene to prove he committed perjury.

■■ Furthermore, both contradictory statements, the one made in 1980 and the other in 1983, were not within the three-year statute of limitations period prescribed for a class D felony. Iowa Code § 802.3. The State asserts that the relevant statutory language can be read to merely require that the contradictory statements be made within three years of *each other* and *one* of the statements must be made within three years of the indictment or information. Under such an interpretation a perjury charge could be brought almost six years after an event, approximately twice the normal statute of limitations period. Such an interpretation is inconsistent with the purpose of a statute of limitations. A statute of limitations is designed to prevent fraudulent and stale ac-

tions from arising after a great lapse of time while still preserving the right to pursue a claim for a reasonable period of time. *Fitz v. Dolyak*, 712 F.2d 330, 333 (8th Cir.1983). We interpret section 720.2 to require that both statements must be made within three years from the time of indictment or information. In this case the three-year period extends back to March 27, 1981. Therefore, the 1980 statement is barred by the statute of limitations from being used to prove Gansz committed perjury by making contradictory statements.

Consequently, we hold that the marshalling instruction was defective. The trial court erred in submitting instructions to the jury that contained an offense not charged by the State and outside the statute of limitations.

Finally, the State urges that even if the trial court erred, such error is harmless error and not reversible error. The State maintains that Gansz was not prejudiced by the court's improper instruction on contradictory statements. The State asserts that Gansz had already labeled himself a perjurer by his own repeated testimony and any negative implications accompanying the court's instruction on contradictory statements was merely superfluous.

■ We have developed certain principles of law concerning trial errors and prejudice. Although a defendant is entitled to a fair trial, he is not necessarily entitled to a perfect one. *State v. Freeman*, 297 N.W.2d 363, 367 (Iowa 1980). When an error is found, prejudice is presumed unless the contrary is affirmatively established, *State v. Henze*, 356 N.W.2d 538, 540 (Iowa 1984), and an error in instructing the jury does not necessitate reversal unless it is prejudicial. *State v. Seiler*, 342 N.W.2d 264, 268 (Iowa 1983). When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice. *State v. Massey*, 275 N.W.2d 436, 439 (Iowa 1979).

■ We do not believe that the State has overcome the presumption of prejudice for the error committed by the trial court in this case. It sufficiently appears that Gansz's rights in the perjury case suffered the requisite harm necessary for a reversal. Without holding that submitting marshalling instructions on an offense not included in the indictment or information is a reversible error as a matter of law, we take notice of the decisions of other jurisdictions. *See, e.g., State v. White,* 431 S.W.2d 182, 186 (Mo.1968) (reversible error when information did not sufficiently allege the offense was committed in the way set out in marshalling instructions to the jury); *People v. Moy,* 56 A.D.2d 853, 853, 392 N.Y.S.2d 60, 61 (1977) (defendant has right to have his guilt or innocence determined only upon the basis of the particular act charged in the indictment or information); *Morris v. State,* 609 S.W.2d 782, 783 (Tex. Crim.1980) (marshalling instruction which authorized a conviction on a theory not charged in the indictment was fundamentally defective and reversal was mandated on direct appeal). The error in this case is especially prejudicial because Gansz admitted that he lied at his 1980 murder trial, so convicting him of perjury in this case by proving he made contradictory statements was merely a foregone conclusion.

The State also urges that because the marshalling instructions were in the disjunctive, the resulting prejudice to Gansz did not constitute reversible error. Additionally, the State points out that after the trial court submitted its purposed instructions to the parties for the purpose of making objections, the court prepared two special interrogatories and submitted them to the jury. The foreperson signed each of the special interrogatories. In interrogatory 1 the jury found that Gansz made a false statement during his trial in 1980 *or* during his postconviction proceedings in 1983 concerning his presence at the scene of the crime. In interrogatory 2 the jury found that Gansz's statements at the 1983 postconviction hearing that his attorney told him to tell a story at trial was false. The State argues that by combining the disjunctive marshalling instructions and interrogatory 2, Gansz's statement about the attorney telling him to lie was properly before the jury and had its own separate basis for convicting Gansz of perjury. Therefore, the State concludes that any error committed by the trial court was merely harmless error.

We disagree with the State's assessment of the prejudicial impact of the improper marshalling instructions. First, part 3 of the instruction was not stated in the disjunctive, it merely stated that Gansz made a contradictory statement of fact in his 1980 and 1983 testimonies. In order to find Gansz guilty of perjury the jury had to find that the State had proven beyond a reasonable doubt all the elements of the offense, including part 3. Since part 3 was not in the disjunctive the jury had to find Gansz made a contradictory statement—an instruction we have already determined was erroneously submitted.

Second, submitting the contradictory statements charge unduly emphasized Gansz's propensity to commit perjury. We are well aware that Gansz impeached himself at the perjury trial by admitting that he had lied at his 1980 murder trial. Gansz later testified, under oath, that he testified as he did at the murder trial under advice of counsel. By the trial court instructing the jury that if Gansz's testimony at either his criminal trial or postconviction trial was false he committed perjury, the court in effect labeled Gansz a perjurer and elevated the impeachment evidence against him to evidence of perjury. The trial court did so even though the running of the statute of limitations should have prevented Gansz from being convicted on the basis of the perjurious statements he made in 1980. Since Gansz already admitted he lied in 1980, we believe the trial court's improper marshalling instructions on contradictory statements could have substantially affected the jury's answer to the second interrogatory as well as the verdict it rendered. We therefore reject the State's claim that Gansz was not prejudiced by the marshalling instruction.

We reverse the judgment of conviction entered by the district court and remand for a new trial.

REVERSED AND REMANDED.